# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

November 24, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**In Re: D.K. & E.S.**

**No. 14-0604** (Mercer County 12-JA-147 & 12-JA-462)

## MEMORANDUM DECISION

Petitioner Father, by counsel Natalie H. Hager, appeals the order of the Circuit Court of Mercer County, entered on June 4, 2014, terminating his parental, custodial, and guardianship rights to three-year-old D.K. and eight-year-old E.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Allison K. Huson, filed a response on behalf of the children that also supports the circuit court's order. On appeal, petitioner alleges that the circuit court erred in terminating his parental, custodial, and guardianship rights without proper consideration of his efforts to reunify with the children throughout these proceedings.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 2, 2012, the DHHR filed an abuse and neglect petition against petitioner alleging that E.S. was truant in the 2011-2012 school year. On September 11, 2012, the DHHR amended the petition alleging a history of domestic violence between petitioner and the Respondent Mother and substandard living conditions for the children, which included no running water or sewage service in the house. The amended petition also made D.K. subject to the proceedings. On September 28, 2012, the DHHR again amended the petition alleging that the Respondent Mother filed a domestic violence petition ("DVP") against petitioner claiming he "picked her up and slammed her against the wall ramming her head into the door and threatened to take her life if she did anything to take his daughter." The petition further alleged another domestic violence incident for which the children were present and in which petitioner and the Respondent Mother were "fighting in the street." Petitioner locked the Respondent Mother out of the house and forced her to sleep outside.

---

[1]Although petitioner testified that he considered E.S. his child and E.S. resided with him at the time of the filing of the abuse and neglect petition, petitioner is not E.S.'s biological father. There is also no indication from the record on appeal that petitioner and the Respondent Mother were married at any time. As the circuit court terminated petitioner's parental, custodial, and guardianship rights to both children, to the extent such rights existed to E.S., we include E.S. in this decision.

1

On November 5, 2012, the circuit court held an adjudicatory hearing on the amended petition. The attendance director for the Mercer County Board of Education testified that E.S. missed twenty-five days of school without a valid excuse and missed twenty days of school with a valid excuse for the 2011-2012 school year. The Child Protective Services ("CPS") caseworker testified that she witnessed the Respondent Mother with two black eyes, which the Respondent Mother admitted petitioner caused. There was also evidence that petitioner committed domestic violence in the home in the children's presence. Further, petitioner's service provider testified that "[t]here was [sic] dog feces all over the porch, all over the walkway up to the house. There was trash outside the home, dirty dishes in the sink that had been there from where they did not have any water in the home." The service provider also testified that, at the time of her visit, the house was without sewage service. The circuit court admitted, without objection, records from the collateral domestic violence proceedings between petitioner and the Respondent Mother. The circuit court found that E.S. and D.K. were neglected children due to truancy and the domestic violence in the house. The circuit court granted petitioner a six-month, post-adjudicatory improvement period.

From the November 5, 2012, adjudicatory hearing until approximately May of 2014, the circuit court granted petitioner and the Respondent Mother two separate improvement periods and two extensions of each. Petitioner received services from the DHHR for at least eighteen months in an effort to improve his parenting and to correct the circumstances that led to the filing of the petition. However, on February 1, 2013, at the first review hearing, petitioner admitted he used marijuana three days before. On May 6, 2013, approximately six months into his period of improvement, petitioner failed to appear in person for the circuit court's second review hearing. At that hearing, the CPS worker considered petitioner's progress slow. She explained that petitioner tested positive for marijuana on multiple drug screens since the previous hearing, that his visits with the children were not going well, and that he only met with his parenting class provider "on and off." Despite this lack of participation and progress, the circuit court, although "concerned about the progress in this case," granted petitioner and the Respondent Mother extensions to their post-adjudicatory improvement periods.

At the August 12, 2013, review hearing, the evidence showed that, despite compliance with enrollment in anger management classes at the day report center, participating in parenting classes, and attending all visits with the children, petitioner continued to test positive for marijuana. Having demonstrated at least partial compliance with the family case plan, the circuit court granted petitioner a dispositional improvement period.

At the November 4, 2013, review hearing, approximately one year after the initial petition was filed, the CPS worker informed the circuit court that petitioner had allegedly damaged the Respondent Mother's boyfriend's vehicle at her residence. The DHHR attached a Bluefield police report to their court summary filed with the court. Due to this incident, and a general nonparticipation with domestic violence classes, petitioner could no longer attend those classes at the day report center. However, because petitioner had otherwise complied with services, the DHHR planned to arrange a domestic violence class with another service provider.

On February 10, 2014, the circuit court held its final review hearing. Petitioner again demonstrated partial compliance in that his residence was suitable and he had attended his visits

with the children. However, the CPS worker informed the circuit court that petitioner could no longer attend domestic violence classes provided by the second service provider because he missed two appointments and was late for a third. He also again tested positive for marijuana in January of 2014. The circuit court permitted petitioner a three-month extension, but in doing so, the circuit court cautioned petitioner that it would be his final chance to demonstrate improvement. The circuit court also granted leave to the DHHR and guardian to file a motion for termination at a dispositional hearing if petitioner failed to comply with all services.

On or about May 7, 2014, the DHHR filed for termination of petitioner's parental, custodial, and guardianship rights. On May 16, 2014, approximately two years after the initial petition was filed, the circuit court held the dispositional hearing. The CPS worker testified as follows: The DHHR still had concerns with the suitability of petitioner's housing and whether he had resolved his domestic violence issues. Petitioner had recently moved for a second time since these proceedings began, and his previous landlord claimed that he owed two months of rent and that his dogs "destroyed" the carpet in the residence. As to domestic violence, petitioner had not completed his domestic violence classes at either the day report center or with the second service provider due to nonparticipation, he damaged the Respondent Mother's boyfriend's car, and he also missed appointments with service providers and/or visits with the children. Since the beginning of these proceedings, petitioner attended only between half to three-fourths of his visits with the children, and he tested positive for controlled substances on multiple drug screens. The circuit court terminated petitioner's parental, custodial, and guardianship rights to D.K. and his guardianship rights to E.S. This appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In the Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner claims the circuit court erred in terminating his parental, custodial, and guardianship rights to the children because he complied with services and made efforts to reunify with the children throughout these proceedings. We find no error in the circuit court's order. As we recently held, "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement

period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re: B.H. and S.S.*, 233 W.Va. 57, 754 S.E.2d 743 (2014). We have also held that "courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened. . . ." Syl. Pt. 4, in part, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 1, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)).

In this case, the circuit court granted petitioner two improvement periods and two extensions. Petitioner had approximately two years to substantially correct the conditions of abuse and neglect at issue herein, but, at best, he only partially complied with services and partially corrected the conditions that led to the abuse and neglect. Petitioner continued to use controlled substances throughout these proceedings, as evidenced by his admission of controlled substance use in February of 2013 and his positive drug screens for controlled substances on multiple occasions thereafter. The DHHR entered unrefuted evidence that petitioner failed to complete his domestic violence classes at either the day report center or with his second service provider. Petitioner was also said to have damaged the Respondent Mother's boyfriend's vehicle, which demonstrates continued domestic violence. He missed appointments with service providers and missed half to three-fourths of his visits with his children. During these proceedings, petitioner's landlord accused him, again without refute, of vacating a residence while owing two months of rent and after his dogs "destroyed" the carpet in the residence. Therefore, the circuit court did not err in moving to disposition, terminating petitioner's rights, and allowing the children to attain permanency.

Based upon the evidence above, it is clear that the circuit court had sufficient evidence upon which to find that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of his parental, custodial, and guardianship rights was necessary for the children's welfare, pursuant to West Virginia Code § 49-6-5(b)(3). Circuit courts are directed to terminate parental, custodial, and guardianship rights upon such findings, pursuant to West Virginia Code § 49-6-5(a)(6). The Court finds no error in the circuit court's termination of petitioner's parental, custodial, and guardianship rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its order terminating petitioner's rights is hereby affirmed.

Affirmed.

**ISSUED**: November 24, 2014

**CONCURRED IN BY**:
Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

4